RUDOLPH BIRCHER, Appellant, *v.* THEOPHILUS PARKER, Respondent.

1. *Landlord and Tenant — Fixtures, removal of by outgoing tenant — Injunction — Dissolution — Sale of property by landlord — Damages.* — Erections placed by a tenant on the leasehold premises for the more beneficial enjoyment of the same may be removed prior to the expiration of his term of lease, unless the removal would leave the inheritance in a worse condition than when he took possession. And if before the expiration of the lease the landlord prevented their removal by injunction proceedings, upon dissolution thereof the tenant is entitled to a reasonable time within which to remove them. And where, pending the ultimate determination of the injunction suit, the landlord had made a deed conveying to a *bona fide* purchaser, without notice, the land, "together with the rights, immunities, privileges, and appurtenances thereunto belonging," the improvements, as between the landlord and tenant, continued to be the personal property of the latter, however the case might be as regards the purchaser. The sale of the improvements by the landlord, and the application of the proceeds to his own use, was a conversion of them, and entitles the lessee to compensation in damages. And the deed from the landlord may be properly read in evidence as tending to show such conversion, and is sufficient for that purpose.

## Appeal from St. Louis Circuit Court.

Respondent was tenant under appellant of a lot and building situated on the west side of Fifth street, between Olive and Locust streets, in the city of St. Louis.

The written lease, under which the respondent held, was made by King and Bigelow (who were then the owners of the property), and bears date January 2, 1861, and was for the term of one year from February 1, 1861. The respondent held over by consent of the lessors; and in April, 1864, the lessors, by deed, conveyed the premises to the appellant, and assigned their lease to him; and the respondent afterward continued in possession, and paid rent under said lease to the appellant until he terminated the lease, on the 1st day of February, 1865.

After the making of the lease, the respondent, in 1861 and 1862, for the more beneficial enjoyment of the premises, made certain erections and additions to the house.

Appellant, understanding that respondent had threatened that he would tear down and remove the erections and improvements

he had made, and was about to remove the same, filed his petition in this case, alleging that his tenant was about to commit serious and irreparable waste, etc., and obtained an injunction restraining him from committing the same.

The petition was filed and injunction granted December 19, 1864. On March 20, 1866, the case was tried in the Circuit Court. The court found the issues for the defendant, and the injunction was dissolved. The court assessed the respondent's damages at $1,500, and gave judgment against the appellant for that sum. On appeal from this judgment for damages to the Supreme Court, the judgment was reversed and the cause remanded. (40 Mo. 118.) The second trial of this case was held at the February term, 1868; at which trial, among other things, the respondent offered in proof of his damages a deed made by the appellant to Amaziah Jones, dated March 26, 1866, by which deed the appellant sold and conveyed the lot to said Jones for the consideration of $69,000. The trial resulted in judgment for damages as before, and the case again comes here on appeal.

*Krum, Decker & Krum*, for appellant.

I. The deed of appellant to Jones should have been excluded. Upon what principle was it admitted? Was it to show a conversion of the fixtures or additions in question by the appellant? Was it to prove the value of this property? Was it to show that the value of these additions formed a part of the consideration expressed in the deed? No theory of the law can be suggested that will justify the admission of the deed in evidence. By his deed the appellant purports to sell the lot of land therein described and whatever is appurtenant thereto. The deed passed nothing more to the grantee. If the deed was offered to show that the appellant sold and received the value of the additions in question, it must be upon the theory that the additions were appurtenant to the land. If this is conceded, it follows as a logical result that the additions did not belong to the respondent. The deed having been admitted, it is impossible now to say what weight the court below gave to it. The entire assessment of

damages may rest upon it. The introduction of this deed cannot now be regarded as immaterial or unimportant. In any view that can be taken, there seems no escape from the error.

II. The damages assessed are excessive. No damage beyond the cost of the litigation should have been assessed against the appellant. The value of the materials of the additions in question should have been disregarded. If the respondent had .the right to remove the materials, the . evidence shows that he had ample time to do so after the injunction was dissolved and before their destruction by fire. The appeal taken by the appellant to the Supreme Court after the first trial of this case did not have the effect to reinstate the injunction nor to continue it in force. No answer was made in respect to the injunction except to dissolve it. The appeal did not rescind or suspend the order dissolving the injunction. This suit is a bill in equity to prevent waste and irreparable injury to the freehold of the plaintiff. It must be conceded that if the injunction had been dissolved at any time before the hearing and final decree, an appeal from the final decree would not have the effect to reinstate the injunction or continue it in force. (13 Johns. 139; 7 Johns. Ch. 295; 3 Paige Ch. 381.) An injunction after an order of dissolution is never revived by implication. An injunction is never revived or continued in force except by a special order of the court. Mr. Eden, in commenting on the decision of Lord. Hardwicke in the case of Bagster v. Walker, says: "The doctrine thus clearly and satisfactorily established has been followed in all the modern cases, and no injunction which has once been dissolved can be revived without special motion." (Eden Injunc., 1st Am. ed., pp. 91, 228; id. ch. 6, p. 82.) The order dissolving the injunction was no part of the decree upon the merits of the case. An injunction is but an incident, and may by order be retained or continued in force — may be dissolved and be revived at the pleasure of the chancellor. (Id. 228.)

III. The appeal to the Supreme Court was from the final judgment in the case. Under our system appeals do not lie except from final judgments, or decrees on the merits, or decrees dismissing bills. Decrees in chancery are not in *solido,* like judgments

at law. A final decree may embrace several subjects, and the party aggrieved may appeal from a part or the whole of a decree; *e. g.*, as where a decree directs the execution of a deed, and also to make compensation in money, a party may submit to the former and appeal from the latter, and *vice versa*. In this case, at the former trial, the court first found the issues for defendant; then ordered the injunction to be dissolved; and then proceeded to assess damages, and rendered judgment for damages against the appellant. What did the appellant appeal from? Not from the order dissolving the injunction; not from the finding of the issues. From either it was impossible to take an appeal. The order dismissing the plaintiff's petition might have been appealed from, but was not. It follows that the appellant appealed from the judgment rendered upon the assessment of damages by the court, and nothing more. There was nothing else to appeal from. It may be said that the statute concerning appeals (R. C. 1855, p. 1287) continued the injunction in force. The statute, it is apparent, does not have this effect; but on the contrary it furnishes a strong if not conclusive argument in support of our position. Respondent's counsel assume that the order dissolving the injunction, and the judgment for damages, are inseparable and make but one judgment, because the final hearing and the assessment of damages were on the same day, and that the order dissolving the injunction and the judgment for damages proceed in consecutive order in the entry made by the clerk of the action of the court. But this is mere assumption; it is unsound. Suppose the injunction had been dissolved, and respondent's damages assessed as provided by section 13, ch. 128, p. 1249, and judgment rendered in the assessment.? An appeal from such judgment would lie, of course, and the appellant need not wait the final hearing of the case. (R. C. 1855, ch. 128, § 12, p. 1287.) We insist, therefore, that the respondent was at liberty to remove his materials from the leasehold premises at any time after the injunction was dissolved. His failure to do so must entail the loss on himself. The case of Kennedy's Heirs v. Hammond, 16 Mo. 341, is relied on by respondent's counsel. That case is not in point, because it shows that the property was

destroyed while the injunction was in force and before it was dissolved by the court.

*Glover & Shepley*, for respondent.

I. The appeal taken from the judgment of the Circuit Court in March, 1866, temporarily annulled the action of that court; of course reinstated the injunction, and the injunction remained so reinstated till the hearing in the Supreme Court, in April, 1867, for the purpose of appeal. The reversing order of the Supreme Court permanently annulled the judgment dissolving the injunction, and left it in full force when the cause was remanded to the Circuit Court. The question of dissolving the injunction, as such, need not cut any figure in the case. It is only to be considered as part of the final judgment appealed from. The final judgment was one dissolving the injunction and dismissing the bill. The judgment was a unit. It was appealed from as a unit. The appeal, being perfected, vacated the judgment which had been entered. (Paine v. Cowdin, 17 Pick. 142.) After the appeal was entered below, the judgment there ceased to exist. (Nichols v. Colville, 1 Tenn. 82.) The effect of the appeal was to render inoperative the judgment in the inferior court. (Bassett v. Daniels, 10 Ohio St. 618.) An appeal from a final decree opens up for investigation the whole merits of the cause which were involved in or connected with the subject matter of the decree. (Teaff v. Hewitt, 1 Ohio St. 511; Campbell v. Howard, 5 Mass. 375; Sever v. Sever, 8 Mass. 132; Danforth v. Carter & May, 4 Iowa, 241; Stone v. Spillman, 16 Texas, 432; Stalbird v. Beattie, 36 N. H. 456; Furber v. Yergin *et al.*, 2 Sneed, 3; Clinton v. Phillips's Adm'r. 7 Mon. 119.) Now, on these rulings, we contend the judgment entered in this court — the final judgment, the judgment deciding the cause against Bircher and dissolving his injunction — was annulled, vacated, and done away with for the time by the appeal. Of course the injunction stood, the judgment of this court was afterward reversed, and the cause came into the Circuit Court for trial again. Whether the injunction was saved by Bircher's appeal depends on the effect of the appeal as vacating the final

judgment. Now, the only question remaining is whether the dissolution of the injunction was part of the final judgment appealed from. It was. Therefore the appeal annulled *pro tempore* the dissolution. Cases of dissolution on rules, as by filing full answer, or on motion during the pendency of the cause, are numerous. They have no application, not being part of the final judgment. And we believe no case can be found where an appeal has been taken from a final judgment, as in this case, that it has not been held to have the operation we ask for it. We think it is idle to say the whole judgment was not appealed from, or has not been reversed, or that the dissolution was not part of the final judgment. The damages are a mere incident to the judgment upon the decision of the issues presented in the cause. Where the dissolution of the injunction affects the merits of the matter, it may be appealed from as well as any other final judgment. (Trustees v. City of Davenport, 7 Clark, Iowa, 213.) The doctrine that an injunction is saved by an appeal is not peculiar to an injunction any more than an attachment, replevin, or appointment of receiver, or any other remedial process or order which falls by the final judgment appealed from. The doctrine we contend for must be the law. It would be impossible to administer justice without it. The cases of 5 Litt. 326; 4 Bibb, 221; 5 Rand. 332, proceed on the idea that the dissolution is the final judgment of the court; and if the party may appeal from it, of course he must have the benefit of the appeal, and there is no benefit except by saving the injunction. If he had appealed from the assessment of damages, and not the whole judgment, the case would have been different. Where an appeal is allowed from an order merely dissolving an injunction, the effect of maintaining the appeal is to reverse the order. (White v. Cazenave, 14 La. An. 57.)

II. It was the proper treatment of the case to hear it as if the bill and injunction were still pending, and try the whole cause *de novo*.

III. The court did so hear and adjudge the cause, and did dismiss the bill and dissolve the injunction and assess the damages.

IV. It was proper in the court to ascertain the value of the

materials in the defendant's improvements. Had it not been for the injunction, they would have been removed at the end of the lease. According to the law of the case as laid down in Bircher v. Parker, 40 Mo. 118, a reasonable time was allowed to remove the materials. But that could not be done, because the injunction was immediately reinstated. The respondent's property was destroyed, therefore, by means of the injunction, which prevented its removal prior to the time of the fire. (Kennedy v. Hammond, 16 Mo. 341.)

V. But the appellant sold the property to Jones pending the injunction. He received by that act full value for this very property. That is the effect of his deed. In fact, he will scarcely pretend, in face of the history of this litigation, that he excepted the improvements in the sale. In construing the deed of Bircher to Jones, to ascertain what was its effect as between them, it will appear that Bircher sold the improvements, which belonged to Parker, to Jones; that he sold them to Jones, and has been paid for them. The question is not whether he had a right to sell them and put their value in his pocket, but simply whether he did do it. (Bratton v. Clawson, 2 Strob. 478.) When land is sold, manure lying on the land passes by the conveyance. Where the question arises on a deed of vendor as to what passes, there is no relaxation of the ancient rigid rules. (Kittridge v. Woods, 3 N. H. 503, 306; Farrar v. Stackpole, 6 Greenl. 154.) There may be articles which a tenant might remove as against a landlord, but as between vendor and vendee the deed will pass them. (Hays v. Doane, 3 Stock. Ch. 96.) Where the owner mortgages real property, the deed will pass all things attached to the soil, though a tenant might have the right to remove them. (Winslow v. Merchants' Insurance Co., 4 Met. 310.) As between vendor and vendee, whatever is affixed or annexed to the freehold is part of it, and passes. (Buckley v. Buckley, 11 Barb. 63.) There is no doubt that on this bare deed of Bircher to Jones (there being no reservation or exception in it), Bircher has sold and conveyed, and has been paid for, all the improvements on the property at the date of his deed.

CURRIER, Judge, delivered the opinion of the court.

When this case was here on a previous occasion (40 Mo. 118), it was held that the erections in question, upon the evidence as then presented, as between these parties, belonged to the defendant, and that he was at liberty to remove them in a reasonable time after the dissolution of the injunction which had been granted therein; and this, although his lease had expired between the granting and dissolution of the injunction. The court below, however, on dissolving the injunction, proceeded to assess the defendant's damages, and included therein the value, for the purpose of removal, of these buildings; and for that reason the judgment was reversed and the cause remanded. The case is brought here again for the correction of supposed errors occurring in the subsequent proceedings. On the merits the evidence is conflicting. As regards the character of the erections, their connection with the original building standing on the premises, and the propriety of their removal, we concur in the finding of the Circuit Court.

At the second hearing, as evidence of a conversion by the plaintiff of the erections in controversy, the defendant offered and read in evidence a warrantee deed from the plaintiff to Amaziah Jones, expressed to be for the consideration of $69,000, and dated March 26, 1866, conveying to the latter the ground on which said erections stood, " with the rights, immunities, privileges, and appurtenances thereto belonging." To the action of the court in admitting this deed, the plaintiff excepted. That the deed upon its face, as between the parties to it — vendor and vendee — conveyed the buildings, as well as the land on which they stood, we do not conceive to admit of doubt. There is no clause in it reserving them, nor does it contain any restriction or exception limiting its scope or effect as a conveyance. To say that the plaintiff had no right to convey away the defendant's property does not meet the difficulty. The point is not what the plaintiff had a right to do, but what he did. As between himself and his vendee, he did in fact convey this property and vest the title thereto in the purchaser. He did this claiming the right to do so as the owner of the property, as is apparent from the

deed, and as this litigation sufficiently shows. He sold the property and applied the avails to his own use. Is not that conversion? This property (the improvements), although affixed to the realty and a part of it, as between vendor and vendee, was, as between the landlord and tenant, the mere personal effects of the latter.

It is to be inferred that the plaintiff was in possession of the premises, for the defendant abandoned them at the expiration of his lease without removing the improvements, as the injunction was at that time in full force. At all events the defendant was not in possession at the time of the purchase by Jones; nor does it appear that Jones had any notice of the defendant's ownership, unless the pendency of this suit is to be considered as affecting him with notice. Granting the defendant's fullest right and ownership, not being in possession, could he hold as against a purchaser without notice? The distinction between the rights of an out-going tenant and those of his landlord, in respect to improvements placed upon rented property for temporary use and for its better enjoyment by the tenant, is stated in the opinion of the court given in this suit, and reported in 40 Mo. 118. As to what passes to the vendee under a deed containing no exceptions or reservations, as in the present case, the following authorities may be consulted: 2 Strob. 478; 3 N. H. 503; 6 Greenl. 154; 3 Stock. Ch. 96; 4 Met. 310; 11 Barb. 63. We hold, then, that the improvements in question belonged to the defendant as against the plaintiff (his landlord), however it might be as regards a purchaser without notice; that a conversion of them by the plaintiff entitles the defendant to compensation therefor in damages; that the deed read in evidence was properly admitted as tending to show such conversion by the plaintiff; and that, under the circumstances of this case, it is sufficient for that purpose. This disposes of the case without determining the effect of the appeal upon the order of the court dissolving the injunction.

The judgment of the Circuit Court is affirmed. The other judges concur.