JAMES ·A. CHANDLER, Respondent, v. W. A. OLDHAM, Appellant.

Kansas City Court of Appeals, November 20, 1893.

Lease: CONSTRUCTION: SALE BY LANDLORD. A lease stipulated that in case of sale, the lessee was to have a fair valuation for any and all improvements made by him. The lessor sold, during the term, subject to all the lessee's rights under the lease. The lessee attorned to the purchaser and occupied the premises till the expiration of the lease, when he abandoned the premises and improvement and brought this action against his lessor for the value of the improvements. *Held,* he could not maintain the action, as the above stipulation was only intended to apply to a sale where the lessee's rights would not be protected.

*Appeal from the Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED.

*Wellington Gordon* for appellant.

(1) A fair construction of the contract as shown by the terms thereof, as also by the acts of the parties themselves, was that Chandler should receive from Oldham a fair valuation as pay for his improvements; *provided,* Chandler was not by reason of said sale in any manner prevented from the use and enjoyment of his slaughterhouse and pen for the whole period of six years. *Belch v. Miller,* 32 Mo. App. 387; *Lumber Co. v. Warner,* 93 Mo. 374; *Brewing Co. v. Water Works,* 34 Mo. App. 49. The evidence on the part of Oldham showed conclusively that in May, 1889, he sold his land, made a deed and at some time took the written agreement of his grantees, Nichols & Bergman, binding them to continue the lease of Chandler and protect him

in his possession for the full six years.  He advised Chandler of this agreement and Chandler expressed himself as satisfied and agreed to pay his rent to Nichols & Bergman, and to continue on in his lease as their tenant.  To this arrangement Chandler says in his testimony he consented and paid his yearly rental to Oldham's grantees.  This was clearly an admission on the part of Chandler that he did not claim damages by reason of Oldham's selling the property, and that he understood the contract as Oldham did—that in case of a sale of the land, if he was not disturbed in his posession he was not to be paid for his improvements. *Brewing Co. v. Water Works*, 34 Mo. App. 49; *Dobins v. Edmonds*, 18 Mo. App. 307; *Crawford v. Elliott*, 78 Mo. 497.  Plaintiff at the end of his term had a right to remove all his improvements, as they were erected by him, to be used in his business and trade, and he had no right at the end of his term to abandon them and sue defendant for their value.  *Bircher v. Parker*, 40 Mo. 118; 2 Taylor's Landlord and Tenant, sec. 551, pp. 111, 159; *Kuhlmann v. Meier*, 7 Mo. App. 260; 32, 161; *Clemmens v. Murphy*, 40 Mo. 121; *Bircher v. Parker*, 43 Mo. 443; *Seible v. Siemon*, 72 Mo. 526.

*Turner, Hinton & Turner* for appellant.

(1) Appellant's first contention seems to be that the trial court erred in failing to read into the contract, as made by the parties, an additional proviso, namely, that, in case of a sale of the leased premises, Chandler should only be paid for his improvements in the event that he should be evicted by Oldham's grantees before the expiration of six years.  Certainly there is no such proviso in the contract itself; it first grants the premises to Chandler for the purpose of a slaughterhouse and fencing being erected thereon; second, provides

for a yearly rental of $25 for the use of the ground, and that the lease should run at the option of Chandler for at least six years; third and last, that in case of a sale of the leased premises, Chandler should have a fair valuation for any improvements made by him, provided that nothing in the contract should be so construed as to prevent him from holding the lease for at least six years. This last is the only proviso in the contract, and it doubly secured to respondent the right to the possession of the leased premises for at least six years, sale or no sale. The obvious intention of the parties, as it appears in the contract, was that in case of a sale of the leased premises, putting it beyond Oldham's power to renew the lease, Chandler should be reimbursed for the reasonable value of the improvements. This, we take, is the only construction that can be gathered from the terms of the instrument itself. That the express terms of this contract could not be varied, nor additional conditions or provisions read into by aid from parol testimony, we take to be too well settled in this state to require the citation of authorities. *State ex rel. v. Hoshaw*, 98 Mo. 358; *Thompson, Payne & Co. v. Irwin, Allen & Co.*, 42 Mo. App. 403, and authorities cited at page 421. The authorities cited by counsel for appellant in the first section of his brief have no application to a case of this character. (2) The general law undoubtedly is that in the absence of a contract regulating the rights of the parties a tenant may remove certain kinds of fixtures placed upon the leased premises for his own purposes. But in this case the parties were operating under a written contract regulating this point, and not under the general landlord and tenant law, applicable only in the absence of contract. The contract itself provided that the tenant should be paid for his improvements in case of a sale of the leased premises, and hence precluded any idea of a right or

duty to remove the improvements, even if this court would hold that a slaughterhouse on a stone foundation, fenced with barbed wire fencing, and a stone-curbed spring were the proper subjects for removal under the doctrine invoked by appellant. Tiedeman on Real Property [1 Ed.], sec. 176, p. 111; *Iron Works v. Hitt,* 49 Mo. App. 472.

GILL, J.—This controversy arose out of about the following state of facts:    Defendant Oldham was the owner of forty acres of land north of and immediately adjoining Columbia.    Plaintiff Chandler, a butcher, desired the use of about an acre of this land for slaughtering purposes, and after some negotiating the following written agreement was entered into:

MAY 1, 1886.

"Articles of agreement between W. A. Oldham, of the first part and J. A. Chandler of the second part: J. A. Chandler is to have privilege of building slaughterhouse on pasture of said Oldham, north of Columbia, on gravel road and to inclose a lot with suitable fencing.    For this privilege said Chandler is to pay the sum of $25 per year, the lease to run at the option of Chandler, for at least six years.    In case of sale of said property, Chandler is to have a fair valuation for any and all improvements made by him, provided that said Chandler shall not by anything in this article, be prevented from holding the lease for at least six years.

"W. A. OLDHAM,
"J. A. CHANDLER."

Before the expiration of this ground lease, and when about three of the six years yet remained, Oldham sold the pasture land above mentioned to Nicholds & Bergman; but in making the sale, the leasehold interest of Chandler was, by agreement between Oldham

and Nichols & Bergman, saved and left undisturbed. Chandler was informed of the change of ownership, attorned to his new landlords, and continued to occupy the acre of land and slaughterhouse by him erected thereon, until in May, 1892,—the expiration of the lease —when he abandoned the premises and the improvements he had put there for his use in slaughtering, and then brought this action against Oldham, the former owner, for the value of such improvements.

The cause was tried by the court without the aid of a jury; and from a judgment in plaintiff's favor in the sum of $185 defendant appealed.

The facts we have to deal with are practically undisputed, and we have detailed above such as are material. The point we have to decide is, whether or not the trial court properly construed the written agreement above quoted.

The learned judge who tried the case below seems to have regarded the written contract as imposing on Oldham the absolute duty of paying Chandler for his improvements if the land was sold regardless of the fact whether or not Chandler was disturbed in his leasehold. In other words, it was held that when Oldham, during the currency of the lease, conveyed the forty-acre pasture to Nichols & Bergman he (Oldham) then became bound absolutely to pay Chandler the value of his slaughterhouse improvements, even though Chandler's leasehold interest was reserved and left unimpaired in such sale of the freehold.

We cannot give our assent to this construction of the written contract. It hardly comports with what we deem a fair and reasonable interpretation of the face of of the instrument; and is so unreasonable and contrary to the circumstances and conduct of the parties in (the light of which the instrument ought to be viewed) that we feel constrained to deny it. The evident pur-

port and meaning of the writing was that, for a consideration of $25 a year, Oldham rented to Chandler for a period of six years the land whereon said Chandler was to pursue his trade—the butcher business. Under this letting Chandler would have the right, during his tenancy or at the close thereof, to remove his trade fixtures and improvements, so long as their removal would not materially injure the freehold as it was when he took the lease. 2 Taylor's Landlord and Tenant section 544, *et seq.* [8 Ed.]; *Kuhlmann v. Meier*, 7 Mo. App. 260–263; *Bircher v. Parker*, 40 Mo. 118–120; s. c., 43 Mo. 443.

Chandler then had a lease on this acre of land with the right, during his tenancy, to remove the improvements placed thereon for the conduct of his trade. But it was thought that Oldham might sell the property during Chandler's tenancy and an innocent purchaser (unacquainted with the terms of the lease) might become entitled to these improvements. Hence the writing was made to stipulate that in "case of sale of said property Chandler is to have a fair valuation for any and all improvements made by him." The sale here provided for was a sale not only of the *freehold* but of the *leasehold*, such a sale as would deprive the tenant, as between him and Oldham's grantee, of the enjoyment of the lease. But no such sale was made. When Oldham conveyed to Nichols & Bergman he expressly reserved the interest of Chandler held under the lease. So that, indeed, Chandler lost nothing. Oldham advised him of the sale and of the reservation in his favor, and he, Chandler, expressed his satisfaction and thereafter recognized Nichols & Bergman as his landlord and paid them rent for the remainder of his term. Oldham, the landlord, in effect covenanted with Chandler, the tenant, to protect him in the enjoyment of the six years' term, and this the evidence

unquestionably shows he complied with. The leasehold was not sold or disturbed in any way, and it would be the rankest injustice to permit Chandler to maintain this action.

The judgment, which was for the plaintiff, was clearly, in our opinion, for the wrong party and will be reversed. All concur.