JOSEPH EVARTS v. LEWIS YOUNG.*

*Evidence.   Hearsay.   Declaration of Deceased Person as to
Ancient Private Boundary.   Presumption.
Burden of Proof.*

In trespass *qua. clau.* question was in regard to the location of the division line be-
tween plaintiff's and defendant's land.   Plaintiff contended that it ran according
to an ancient survey; defendant, that it ran by a certain stone corner.   It appeared
that plaintiff had been in possession on one side since 1824, under claim of owner-
ship, and that A., through whom defendant claimed, also went into possession in
1824, and continued therein, under like claim, until his death in 1874.   Plaintiff, to
prove that the true line was in accordance with the survey, testified that the line
was surveyed in 1831, and that the line then surveyed was acquiesced in until A's
death.   Defendant, "for the purpose of establishing his line", was allowed to in-
troduce evidence tending to prove that A., while in life, made declarations tending
to show that the line ran by the stone corner.   *Held*, admissible, to show that A.
was not acquiescing at the times when the declarations were said to have been
made, but not to show where the line in fact was; and not admissible as the dec-
laration of a deceased person in regard to an ancient private boundary, for that
the declarant was not without interest to misrepresent.

Plaintiff requested the court to charge that the line for which he contended had been
acquiesced in for fifteen years, and had become the true line, and that any differ-
ent line, unless "claimed for fifteen years, would not defeat the former line."   The
court charged that where adjoining proprietors treated a line as the true line for
fifteen years, the line would be a legal division.   *Held*, questionable if, although the
rule as to establishment of lines by acquiescence was correctly stated, plaintiff was
not entitled, in answer to his request, to a charge stating further that if plaintiff's
evidence proved the establishment of the line for which he contended by fifteen
years' acquiescence following 1831, the burden would be on defendant to show sub-
sequent establishment of the line for which he contended.

TRESPASS *qua. clau.*   Plea, general issue, and trial by jury,
April Term, 1878, ROYCE, J., presiding.

It appeared that the plaintiff and the defendant were owners of
adjoining lands.   The plaintiff whose land lay south of the de-
fendant's, had been in possession under claim of ownership since
1824 ; and it appeared that the plaintiff's brother, through whom
the defendant derived title, went into possession at about the same
time that the plaintiff did, and continued in possession, under
claim of ownership, until his death in 1874.   The contention was

* Heard at the January Term, 1879.

42

in regard to the dividing line, the plaintiff contending that it ran as indicated by a " red line " on a plan that he introduced, while the defendant contended that the true line ran through or started from a " stone corner." The plaintiff testified that in 1831 he and his brother and his father Reuben employed a surveyor, one Judge Beeman, to run a line near the original lot line, which up to that time had been the division line, but crossing it in such a way as to make an acute angle with it and to cut off a small part of the plaintiff's land on the west, and a corresponding part of the defendant's land on the east; and that the line then ran, known as the Beeman line, and indicated by the " red line " on said plan, was acquiesced in as the true line from that time until the death of his brother, and was the true dividing line. The plaintiff's testimony was not contradicted except as hereinafter stated. The defendant, " for the purpose of establishing his line", introduced one Elisha P. Cleveland as a witness, who testified that he had a conversation with said Anson, " some twelve or fifteen years " before the time of trial, in which Anson said the " stone corner" was the true corner of his land. On cross-examination he testified that he never knew where the line defined by Anson was, until ten or twelve years before the time of trial. Several other witnesses were introduced by the defendant, who testified to like conversations had at subsequent times with said Anson. It appeared that the plaintiff was not present at any such alleged conversations. The testimony of these witnesses was duly objected to by the plaintiff; and to its admission the plaintiff excepted. The evidence on the part of the defendant also tended to show that nineteen years before the trial the plaintiff employed men to build a wall running southward from the line and at right angles thereto, and that the plaintiff then pointed out the place for the north end of the wall, saying, "The place is about here; the fence is on me."

The defendant offered in evidence the probate records of the division of said Anson's estate and certain deeds from parties through whom he himself claimed, and also certain pages of the records of the proprietors of the town where said lands were situated. To their admission the plaintiff objected, but they were admitted, and to their admission the plaintiff excepted.

The plaintiff requested the court to charge that the line for which he contended was acquiesced in for fifteen years or more and " down to twelve or fifteen years " before the trial, that it " must have ripened into the true line, and that any different line, unless " claimed for " fifteen years, would not defeat the former line."

The court declined so to charge, but charged that where adjoining proprietors agreed on a line that should divide their lands, and occupied thereto, and treated that line as the dividing line, for a period of fifteen years, they were estopped from denying it ; that the line would be " a legal division line between the parties"; that if there was any line here that was acquiesced in for that length of time by the plaintiff and his brother, " that line would bind them " and those who claimed title under them ; that the question for the jury was as to whether there was such a line, and, if there was, as to where it was. The court charged further on the subject of admissions that they were " not the most satisfactory kind of evidence", depending on so many contingencies, whether the witness recollected accurately, whether he used the same language that was used when the admission was made, whether he repeated accurately, &c., and left it for the jury to say what weight that testimony should have on the question as to where the true line was. To the refusal to charge as requested and to the charge given, the plaintiff excepted.

*Davis & Stevens*, for the plaintiff.

Declarations of a predecessor in occupancy are not admissible in support of his grantee's title. They are but hearsay, and are admissible only when against the interest of the one who made them. The testimony of Cleveland and others was therefore inadmissible. *Smith* v. *Martin*, 17 Conn. 401 ; 1 Greenl. Ev. ss. 147 *et seq.*, 169–171. It was inadmissible for the purpose and to the extent for which it was received—for the purpose of establishing the defendant's line. *Wood* v. *Willard*, 36 Vt. 82 ; *Kimball* v. *Ladd*, 42 Vt. 747 ; *Long* v. *Colton*, 116 Mass. 416 ; *Fischer* v. *Bergson*, 49 Cal. 295.

The plaintiff's request to charge that his evidence showed the

line for which he contended to have been acquiesced in for more than fifteen years, and down to a period within less than fifteen years of the beginning of the suit, should have been complied with. *Whitney* v. *Lynde*, 16 Vt. 579 ; *Clark* v. *Tabor*, 28 Vt. 222 ; *Tracy* v. *Atherton*, 36 Vt. 512.

The portions of the proprietors' records that were admitted, were wholly immaterial upon any issue in the case.

*F. W. McGettrick*, for the defendant.

The testimony as to the declarations of Anson was properly admitted. Anson was in possession of the premises when he made the declarations, and he was dead at the time of trial. *Perkins* v. *Blood*, 36 Vt. 273 ; *Noble* v. *Sylvester*, 42 Vt. 146 ; *Kimball* v. *Ladd*, 42 Vt. 747 ; *Wood* v. *Willard*, 36 Vt. 82 ; *Wood* v. *Willard*, 37 Vt. 377 ; *Child* v. *Kingsbury*, 46 Vt. 47 ; *Powers* v. *Silsby*, 41 Vt. 288 ; *Hadley* v. *Howe*, 46 Vt. 142 ; *Miller* v. *Wood*, 44 Vt. 378.

The deeds and records were admissible to prove defendant's title and the location of the true line.

The plaintiff's request could be sustained only on the ground that the evidence had no tendency to prove the line otherwise than as claimed by the plaintiff, and to comply with that request would be equivalent to ordering a verdict for the plaintiff, which could not be justified.

The opinion of the court was delivered by

Ross, J. This is an action of trespass on the freehold. The plaintiff and defendant are proprietors of lands lying contiguously to each other. The contention is in regard to the boundary line between their lands. The plaintiff had been in possession of the land lying south of the disputed line, since 1824, claiming to own it. Anson Evarts, his brother, about the same time went into possession of the land north of the line in dispute, and continued therein to the time of his decease, in 1874, claiming to own it. The defendant derives title through Anson Evarts. The plaintiff claimed that the " red line " on the plan introduced by him was the true line, while the defendant claimed that the line

starting from or running through the "stone corner" was the true line. The plaintiff's testimony tended to show that he and his brother Anson and father Reuben, in 1831, procured a surveyor, Judge Beeman, to run the line—not on the line between the lots—so that there was an exchange of a small amount of land between them, and that the line thus run was acquiesced in by him and Anson Evarts until the death of Anson Evarts, in 1874, and was the line to which he claimed. This testimony was uncontradicted, except by the declarations of Anson Evarts, made within the last twelve or fifteen years, that the "stone corner" was the corner of his land, and by a declaration of the plaintiff made nineteen years before the trial, in regard to the location of the end of a wall built by him running at right angles with the line. The declarations of Anson Evarts were allowed to be shown, against the exception of the plaintiff, and were allowed by the court to be used as tending to show where the line between them in fact was. In giving, or allowing to be given, to this evidence this scope and effect, we think the County Court erred. A party is not allowed to show his own declarations or the declarations of those through whom he claims title, in his own favor, unless such declarations accompany and give character to some act affecting his title, and so become a part of the *res gestæ*. This subject has frequently received the consideration of this court. In *Wood* v. *Willard*, 36 Vt. 82, it was held that the declaration of the grantor as to where his line was, made at the time he sold and conveyed the premises to the plaintiff and while upon the premises pointing out the line, were not admissible. On the other hand, in *Kimball* v. *Ladd*, 42 Vt. 747; *Noble* v. *Sylvester*, 42 Vt. 146; *Perkins* v. *Blood*, 36 Vt. 273, it is held that the declaration of a party or of a person through whom the party derives title, made while exercising a right or easement, and tending to show that he claimed to exercise it in his own right, or that he had not abandoned his prior possession or right to a piece of property, are admissible for such purpose only. Under this rule the declarations of Anson Evarts allowed to be shown, were admissible to rebut the testimony of the plaintiff tending to show that, at the several times when they were made, Anson Evarts

was acquiescing in the line claimed by the plaintiff, and only for such purpose. They were not admissible for the purpose of showing where the Beeman line was, nor where the true line between him and the plaintiff then was; and on the question of acquiescence they should be confined strictly to the periods of time at which they were respectively made, and not be allowed as tending to show that he had not from 1831 to the time of making such declarations, acquiesced in the line as the plaintiff's testimony tended to show. Acquiescence is the state of a party's mind regarding a particular subject or thing, and his declarations on that subject or thing, are the indices of his state of mind thereon at the times they are respectively made.

These declarations, although Anson Evarts has deceased, do not fall within the rule established in *Wood* v. *Willard*, 37 Vt. 377, *Powers* v. *Silsby*, 41 Vt. 288, and some other more recent cases, allowing hearsay testimony, or declarations in regard to ancient boundaries between the estates of private individuals. The rule for the admission of such testimony, as expressed by PIERPOINT, C. J., in *Wood* v. *Willard*, *supra*, is, "that the declarations of deceased persons who had actual knowledge as to the location of such boundaries, or who, from their connection with the property itself, or their situation and experience in regard to such boundaries and the surveys thereof, had peculiar means of knowledge so that it may fairly be inferred that they had actual knowledge of the same, *made at a time when they had no interest to misrepresent*, . . . may be received as to the location of such boundary, when from lapse of time there can be no reasonable probability that evidence can be obtained from those who had actual knowledge on the subject." It is an important qualification that the declarant, at the time of making the declaration, should have no interest to misrepresent. Anson Evarts making a claim in his own favor, was not thus disinterested. Whether the transaction in regard to the Beeman line was of such antiquity as to allow this class of testimony for the establishment of its location, is not admitted nor decided, as this testimony for this purpose is held inadmissible, on the ground that Anson Evarts, when

he made the declarations, was interested in having the stone corner established as his corner.

There may be some question whether the plaintiff was not entitled to a fuller compliance with his request. The charge of the court states the doctrine in regard to the establishment of a line by acquiescence correctly, but fails to call the attention of the jury to the fact that if the plaintiff's evidence established that line where he claimed it to be by fifteen years' acquiescence immediately following 1831, the burden would be then cast on the defendant to show it had been subsequently changed to the place where he claimed it to be.

We are not able to see for what purpose the proprietors' records of the town of Georgia were admissible, as neither party, as we understand the exceptions, claimed the original lot lines to be the true line between them. Neither is it manifest to us how the plaintiff could have been prejudiced by their admission. We should have been reluctant to have reversed the case on this exception, as, at most, we regard this testimony immaterial to the determination of the issue on trial.

*Judgment reversed, and cause remanded.*