A R. STRAW *vs.* JOHN STRAW.

October Term, 1897.

Present:   Ross, C. J., ROWELL, TYLER and THOMPSON, JJ.

*Trover—What Amounts to a Conversion—Reservation in Deed Equivalent to Severance.*

The plaintiff and another, as co-administrators, conveyed to the defendant a starch factory, reserving the water-wheel and shafting, and the plaintiff is found by the referee to be the owner of the property reserved.  The court infer from this finding a conveyance to the plaintiff by his co-administrator, and hold that trover may be maintained for the wheel and shafting although still annexed to the realty, the parties having by their deed treated them as personalty.

The fact that the defendant had used the wheel and shafting for two years as a part of the factory did not affect the plaintiff's right to enter and remove, no time having been fixed in the deed within which the right must be exercised.

The defendant was not bound to return the wheel and shafting and his refusal was not a conversion, but his accompanying claim of ownership was equivalent to a denial of the plaintiff's right to enter and remove, and an appropriation to his own use.

TROVER.   Heard on the report of a referee at the December Term, 1895, Lamoille County, *Start,* J., presiding.   Judgment for the plaintiff.   The defendant excepted.

*George Wilkins* for the defendant.

The right of the administrators under their reservation was only to enter and take.   The defendant was not bound to deliver.   His refusal was not a conversion.

There was no conveyance to the plaintiff by his co-administrator, and his right, if any, was obtained by some sort of a trade between himself, the defendant and other claimants against the estate.   He does not stand upon the joint title reserved in the deed, and consequently the wheel and shafting must, as against him, be treated as real estate, for which trover will not lie.

*George M. Powers* and *L. C. Moody* for the plaintiff.

Ross, C. J.   The defendant controverts the plaintiff's right to recover for the water wheel and the main shafting connecting it with the starch factory machinery.   These were put in by Thomas A. Straw who owned the equity of redemption of the premises.   The plaintiff does not contend that while thus situated the water wheel and main shafting did not become fixtures, under the decisions of this court, and were covered by the mortgage then owned by W. H. H. Bingham.   After the decease of Thomas A. Straw, his administrators did not intend to redeem the factory.   Mr. Bingham thereupon sold his interest in the mortgage and mortgaged premises to the defendant.   To effect the transfer of his interest in the mortgage and mortgaged premises, he conveyed by a quit claim deed to the administrators on the estate of Thomas A. Straw.   This conveyance merged the estate of the mortgagee in the administrators.   Thus the entire estate and interest in the starch factory premises became vested in the administrators.   The plaintiff, defendant and a brother and sister were creditors and held claims allowed against the estate of Thomas A. Straw.   When the administrators conveyed the starch factory premises to the defendant they reserved the water wheel and shafting put therein by Thomas A. Straw subsequently to the giving of the mortgage owned by Mr. Bingham.   The plaintiff purchased of the defendant, his brother and sister their claims against Thomas A. Straw's estate and their interest in the water wheel and machinery reserved in the deed of the administrators to the defendant.   The referee finds that the plaintiff owned the water wheel and shafting in controversy.   The plaintiff was one of the administrators on Thomas A. Straw's estate and in his and his co-administrator's deed of the starch factory premises reserved it. Whether there was a conveyance by the co-administrator of this property to the plaintiff, the referee has not stated; but that fact must be inferred, because the referee finds that

the plaintiff owned it. The defendant does not contend that, on the facts found by the referee, he has any title to the property in controversy. The referee also finds that when the plaintiff demanded the water wheel and shafting, they were then in their place in the starch factory and that the defendant had then been using them in that connection, for more than two years after the reservation of them to the plaintiff and his co-administrator in their deed of the starch factory premises to him. The defendant contends that by their location and use, when demanded, they were fixtures, and that they cannot be recovered for in an action of trover.

The plaintiff and defendant are parties to the administrator's deed. By the reservation therein and the acceptance of the deed by the defendant, the parties treated the water wheel and shafting as existing separate and apart from the starch factory, or as personal chattels belonging to the plaintiff. The reservation, by implication, gave the plaintiff a license to go upon the premises and remove the wheel and shafting. The reservation in legal effect was not unlike the sale of growing trees, stones or of a building. If to be removed in a short time, the law treats them, as the parties do, not as attached to and a part of the realty, but as personal·chattels. *Powers* v. *Dennison*, et al., 30 Vt. 752; *Judevine* v. *Goodrich*, 35 Vt. 19; *Noble* v. *Sylvester*, 42 Vt. 146; *Sterling* v. *Baldwin, exr.*, 42 Vt. 306.

The defendant contends that if such was the effect of the reservation, inasmuch as the plaintiff allowed the wheel and shafting to remain over two years attached to the starch factory, and to be used by the defendant, he lost the right to remove them. By the reservation no time was fixed in which they were to be removed, or the right should cease to exist, as was done in *Judevine* v. *Goodrich, supra.* By using them over two years the defendant acquired no ownership of the property, and the plaintiff did not lose his title to the property. So long as the plaintiff continued to

own the property the right to enter upon the premises and remove it existed by implication. It would seem that the plaintiff's title and right to remove would exist, until the defendant acquired title thereto by adverse use under a claim of title thereto in himself. In *Noble* v. *Sylvester, supra,* where the defendant had set up no such claims the plaintiff was allowed to recover for stone which he had severed from the realty for a particular use, away from the farm, some thirty years after he had conveyed the farm to the defendant, the defendant in the meantime not having interfered with them nor set up an adverse claim to them.

The defendant further contends that the facts found do not amount to a conversion of the property. He rightfully says that the defendant was under no duty to take the property out of the factory and return it to the plaintiff. If the finding of the referee had gone no further than that when demanded, the defendant refused to return them, this contention might be sustainable. But the referee finds that defendant not only refused to return them, but at the same time claimed to own them. The defendant's refusal accompanied by a claim that he owned them, amounts to a denial of the right of the plaintiff to enter and remove the property, or an appropriation of the property to the defendant's use. Certainly, after such a refusal and claim, the statute of limitation would begin to run against the plaintiff's right to the property, and in favor of the defendant's right thereto. The facts found show a conversion of the property by the defendant.

*Judgment affirmed.*